## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 29 2018, 9:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Terrance D. Mitchell,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | June 29, 2018<br><br>Court of Appeals Case No.<br>48A02-1712-CR-2980<br><br>Appeal from the Madison Circuit Court<br><br>The Honorable Mark Dudley, Judge<br><br>Trial Court Cause No.<br>48C06-1206-FB-1077 |

**May, Judge.**

[1] Terrance D. Mitchell appeals the revocation of his probation. He raises two issues, which we restate as:

1. Whether the State presented sufficient evidence to support revocation; and

2. Whether the trial court abused its discretion by ordering Mitchell to serve two years of his six-year suspended sentence.

We affirm.

# Facts and Procedural History

On August 20, 2012, pursuant to a plea agreement, Mitchell pled guilty to Class B felony unlawful possession of a firearm by a serious violent felon,[1] Class C felony carrying a handgun without a license,[2] and Class A misdemeanor possession of marijuana.[3] The trial court imposed a twelve-year sentence, with six years suspended to probation. Mitchell was released from the Department of Correction ("DOC") on June 29, 2017. On August 16, 2017, Mitchell signed the "Participation Agreement" for "Madison County Reentry Court"[4] as a condition of his probation. (App. Vol. II at 74.)

---

[1] Ind. Code § 35-47-4-5 (2006).

[2] Ind. Code § 35-47-2-1 (2011).

[3] Ind. Code § 35-48-4-11 (Mar. 15, 2012).

[4] The record and briefs use "Reentry Court," (App. Vol. II at 74), "Problem Solving Court," (Tr. at 13), and "problem solving court reentry program," (Br. of Appellee at 6), interchangeably when referring to the probation services offered to Mitchell during the pendency of this case. For clarity, we refer to the program as the Reentry Program.

[3] Chris Lanane is the "coordinator of the Problem Solving Courts in Madison County." (Tr. at 13.) On September 1, 2017, Mitchell went to see Lanane about his work release schedule. Lanane thought it "obvious . . . that [Mitchell] was just trying to circumvent everyone." (*Id*. at 15.) Lanane directed Mitchell back to work release to resolve his issue. Mitchell "was just kind of ranting and raving as he left [Lanane's] office[,] flung that outdoor open[, and] left the building[.]" (*Id*.) Later, when Lanane exited his office, he was approached by Angela Harless who told him a man, later identified as Mitchell, had opened the door and hit her. When she said, "[E]xcuse me," (App. Vol. II at 79), Mitchell had responded with profanity. The door did not have a window in it. Lanane stated he "d[id]n't know that [he had] ever seen anybody swing the door open that violently." (Tr. at 22.) Lanane testified Mitchell's actions while leaving Lanane's office "violate[d] the [Reentry Program's] rule of behaving well in society." (*Id*. at 19.)

[4] Due to Mitchell's behavior, Lanane contacted the officer in charge of Madison County Work Release, Eric Chamness. Lanane requested Mitchell be placed on lockdown until a case manager could meet with Mitchell. When Mitchell arrived at the work release facility, he was informed he was on lockdown. Mitchell left the facility and did not return until later that day. Chamness testified that leaving the facility while on lockdown violates the rules of work release. That day, Lanane petitioned the court for a warrant for Mitchell because of Mitchell's actions.

[5] On September 18, 2017, after a hearing on Lanane's petition, the trial court released Mitchell back to work release and set a review hearing for September 27, 2017. Also on September 18, 2017, during a routine strip search of the men in the work release facility, Mitchell refused to comply with orders given to him by correctional officers. Mitchell refused to keep his hands on his head and refused to move away from the sinks. He cursed at the officers. As the officers were attempting to place Mitchell in handcuffs for his noncompliance, Mitchell "pulled away." (*Id*. at 29.) Madison County Correctional Officer Eric Callandrelli testified such behaviors were violations of work release policy.

[6] The next day, presiding Reentry Court Judge Angela Sims ordered Mitchell remain in custody, rather than at the work release facility, due to his actions on September 18, 2017. On October 5, 2017, Jason Dillmon, a case manager for the Reentry Program, filed a "Notice of Termination Request" giving notice to Mitchell that he had "failed to comply with the participation agreement[.]" (App. Vol. II at 84.) The notice specified the two incidents on September 1 and the incident on September 18 as the reasons for termination.

[7] On October 19, 2017, the State filed a notice of violation of probation because Mitchell had failed to complete the Reentry Program. On October 31, 2017, the court held an evidentiary hearing. Mitchell denied the allegations. Mitchell

testified he had been diagnosed as "mildly . . . mentally handicapped,"[5] (Tr. at 38), and that condition should be considered mitigatory. Finding Mitchell had violated the rules for both the Reentry Program and the work release program, the trial court found Mitchell was "no longer eligible to participate in Re-Entry Court." (App. Vol. II at 15.) As his participation in the program was a condition of his probation, the trial court ordered Mitchell to serve "[t]wo (2) years of the previously suspended sentence[.]" (*Id.*) Thereafter, Mitchell was ordered to return to probation.

# Discussion and Decision

[8] Mitchell asserts the State did not present sufficient evidence to support the revocation of his probation and the trial court abused its discretion in sanctioning him to serve two of the suspended six years of his sentence in the DOC.

## Sufficiency of Evidence

[9] "Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Prewitt v. State,* 878 N.E.2d 184, 188 (Ind. 2007). "The trial court determines the conditions of probation and may revoke probation if the conditions are violated." *Id.*

---

[5] Although in his appeal Mitchell briefly alludes to this diagnosis as the underlying cause of his behavior, no evidence was presented to the trial court that this diagnosis precludes Mitchell's ability to conform to the rules.

[10] We review a decision to revoke probation under the abuse of discretion standard. *Id.* An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* When reviewing whether sufficient evidence supported revocation, we do not reweigh evidence or judge the credibility of witnesses. *Morgan v. State,* 691 N.E.2d 466, 468 (Ind. Ct. App. 1998). If there is substantial evidence of probative value to support concluding by a preponderance of the evidence that the defendant has violated a term of probation, we will affirm. *Menifee v. State,* 600 N.E.2d 967, 970 (Ind. Ct. App. 1992), *clarified on other grounds on denial of reh'g,* 605 N.E.2d 1207 (Ind. Ct. App. 1993).

[11] The State presented evidence Mitchell had 1) opened a door in a manner to cause harm to another person, 2) left the work release facility after being placed on lockdown, and 3) not complied with officers' orders during a strip search. Any one of these actions constitutes a violation of the rules for the Reentry Program. Mitchell's completion of the Reentry Program was a condition of his probation.

[12] Mitchell does not refute the actions alleged by the State. He merely argues that he did not intend to hit the woman on the other side of the door. He presents no argument as to the sufficiency of the evidence regarding the other two incidents. Mitchell's arguments regarding his culpability for the door incident are a request for us to reweigh the evidence, which we cannot do. *See, e.g., Sanders v. State,* 825 N.E.2d 952, 955 (Ind. Ct. App. 2005) (appellate court will not reweigh the evidence from a probation revocation hearing), *trans. denied.*

[13] Based on any of the three incidents, Mitchell's actions broke the rules of the Reentry Program and program management was entitled to request his participation in the program be terminated. We cannot say the trial court erred when it found termination was supported by the evidence and that said termination resulted in a violation of a condition of Mitchell's probation. *See Gosha v State*, 873 N.E.2d 660, 663 (Ind. Ct. App. 2007) (a single violation is sufficient to support revocation).

## Sanction

[14] Once the trial court has found a violation of probation, it may do any of the following:

> (1) Continue the person on probation, with or without modifying or enlarging the conditions.
> (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.
> (3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

Ind. Code § 35-38-2-3(h) (2015). We review the court's choice of sanction for an abuse of discretion, which occurs when "the decision is clearly against the logic and effect of the facts and circumstances." *Prewitt*, 878 N.E.2d at 188.

[15] Mitchell was on probation after being incarcerated for Class B felony unlawful possession of a firearm by a serious violent felon, Class C felony carrying a handgun without a license, and Class A misdemeanor possession of marijuana. As a condition of probation, Mitchell was ordered to participate in the Reentry

Program. Mitchell signed an acknowledgement of the rules for the Reentry Program on August 16, 2017.

[16] On September 1, 2017, less than a month after starting the Reentry Program, Mitchell was "ranting and raving" in Lanane's office. (Tr. at 15.) He then "flung th[e] outdoor open," (*id*.), in a manner more violent than Lanane had ever seen. The door hit Harless' arm. When she said, "[E]xcuse me," (App. Vol. II at 79), rather than apologize, Mitchell responded with profanity. Because of these actions, Lanane contacted the work release program personnel and requested Mitchell be placed on lockdown until the situation could be resolved. When Mitchell was told of the lockdown, he nevertheless left the facility. On September 18, 2017, during a strip search, Mitchell refused to comply with officers' orders about where to put his hands and where to stand. When the officers attempted to place Mitchell in handcuffs due to this noncompliance, Mitchell resisted.

[17] Mitchell had broken the Reentry Program's rules three times. This pattern of behavior led the Reentry Program to request his participation in the program be terminated. That participation was a condition of Mitchell's probation. The trial court expressed concern about how quickly Mitchell had encountered problems conforming to the rules of the Reentry Program:

> Well as I said, the timing makes a difference. Uh it wasn't a stellar start and uh clearly sending you back there is only a recipe for having it repeated because there is some issue that you have that isn't addressed and I'm not sure what that is.

(Tr. at 44.) While Mitchell requested he be allowed to serve his probation on in-home detention or some other program, the trial court dismissed that idea because of how quickly Mitchell had run into problems conforming to the rules and supervision. As such, we find no abuse of discretion in the trial court's order for Mitchell to serve two years of his suspended six-year sentence in the DOC. *See Sanders,* 825 N.E.2d at 957 (given "ample basis for its decision," a trial court's order to serve a suspended sentence is not an abuse of discretion).

# Conclusion

[18] The State presented sufficient evidence Mitchell acted in ways to support termination from the Reentry Program and that such termination was a violation of his probation. Additionally, the trial court did not abuse its discretion when it ordered Mitchell to serve two years of the six-year suspended sentence. Accordingly, we affirm.

[19] Affirmed.

Riley, J., and Mathias, J., concur.